# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RAYMOND HOLMES** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-4143** |
| **UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL 1805** | **SECTION: "C" (4)** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment by Defendant United Automobile, Aerospace & Agricultural Implement Workers of America, Local 1805 ("UAW") (Rec. Doc. 37) and a cross motion for partial summary judgment by plaintiff Raymond Holmes ("Holmes") (Rec. Doc. 61). The motions are before the Court on the briefs without oral argument. After considering the parties' memoranda, the record, and the applicable law, the Court GRANTS the Union's motion and DENIES Holmes's motion for the reasons set forth below.

## I. Background

Holmes was employed as a roaster by Folgers Coffee Company ("Folgers"), and was a member of the UAW. (Rec. Doc. 63-1 at 1). Folgers was a subsidiary of The Proctor & Gamble Company ("P&G"). In March 2002, Holmes was injured in a non-work related accident and was diagnosed with a herniated disc at L5-S1. (Rec. Doc. 63-1). His treating physician found him to be physically disabled, and he applied for and was granted disability benefits under the P&G Disability Benefit Plan ("Plan"). (Rec. Doc. 37-3 at 1). Although he temporarily returned to

work for several months, his condition gradually began to deteriorate. (Rec. Doc. 37-3 at 1).

On July 1, 2003, Holmes' treating physician, Dr. Victor Bazzone, found him to be 100% temporarily disabled from gainful employment as a roaster, and eventually recommended lumbar spine surgery. (Rec. Doc. 63-1 at 2). As a result, Holmes was required to submit Disability Status Reports to the Plan. (Rec. Doc. 37-3 at 2). In September 2003, the Plan sent Holmes a notification that he was required to submit to an examination by their chosen physician, Dr. Dowd. (Rec. Doc. 60-6). The Plan initially scheduled Holmes's appointment for November 18, 2003, but later rescheduled that to November 19, 2003, then January 27, 2004, and finally February 6, 2004. (Rec. Doc. 60-7). When Holmes arrived on February 6, he was told that his appointment had been cancelled two days earlier by Michelle Oulliber,[1] the case manager for the Plan Reviewing Board. (Rec. Doc. 37-3 at 2; Rec. Doc. 60-8). Ultimately, Holmes never met with Dr. Dowd.

In the meantime, on January 9, 2004, the Plan sent a letter to Holmes advising him that his status reports (also referred to as Physician's Certificates) were overdue. (Rec. Doc 37-10). In his deposition for this case, Holmes testified that he had been told that these status reports from his treating physician were unnecessary because he was waiting to see Dr. Dowd. (Rec. Doc. 37-5 at 10). The letter also indicated that "Failure to provide a physician's certificate as requested by the disability reviewing board [b]y 1/23/04 may result in denial of disability benefits by the Trustee's [sic]." (Rec. Doc. 37-10).

Shortly after the February appointment was cancelled, the Plan notified Holmes by letter

---

[1] The Court takes judicial notice of this fact from Judge Engelhardt's opinion in the previous litigation, discussed below. The Court assumes that this Michelle Oulliber is the same "Shelli" Oulliber who signed the documents discussed in the following paragraphs.

2

dated February 6, 2004, that he was no longer eligible for Long Term Disability compensation, and that he was absent from work without authorization. The letter advised him that he needed to return to work by February 12, 2004, or supply the "appropriate medical documentation supporting [his] absence." The February 6 letter was signed by Linda Maxwell, the "Specialty Organization Capability Leader" and sent on P&G letterhead. (Rec. Doc. 37-11).

In response to this letter, on February 10, 2004, Dr. Bazzone sent P&G a letter and enclosed the missing November through February physician's certificates. (Rec. Doc. 37-12). On March 1, 2004, Holmes was a sent a response noting that "Upon review of the medical documentation, it was noted that you have not been seen by your physician since August 27, 2003. You need to provide current objective medical documentation to support any further absence or return to work by March 15, 2003." The letter further indicated that "[f]ailure to do so may result in disciplinary action up to and including termination of your employment." The letter was signed by Shelli Oulliber, Health Systems Leader, and sent on P&G letterhead. (Rec. Doc. 37-13). On March 4, 2004, Holmes was sent a letter indicating that his claim for benefits for the period beginning January 24, 2004, was denied. (Rec. Doc. 37-3 at 2). The letter advised him of the definition of "Total Disability" under the Plan and of his right to appeal the determination. (Rec. Doc. 37-14).

On March 12, 2004, Dr. Bazzone sent another letter stating that Holmes was "disabled from gainful employment." On March 15, the Plan responded that the documentation from Dr. Bazzone was insufficient because it was not "objective." (Rec. Doc. 37-16). The letter, sent by Shelli Oulliber on P&G letterhead, extended the deadline to resubmit documentation until March 24. (Rec. Doc. 37-16). The letter advised that "objective" documentation includes "office notes,

3

radiological reports, laboratory reports, current functional capacity examinations, consultation reports, or any other documentation regarding your current medical condition." (Rec. Doc. 37-16).

Finally, Holmes was terminated. According to a handwritten note by Linda Maxwell dated April 5, 2004, Holmes was terminated pursuant to Article X, Section 2(e) of the contract for being absent from work for more than three days without an excuse acceptable to the company. (Rec. Doc. 37-17).

On Holmes's behalf, then-Union vice president and grievance committee person Glenn Vinson ("Vinson") submitted a grievance for unjust termination. (Rec. Doc 63-1 at 4; Rec. Doc. 60-12 at 12-13). The grievance was pursued through the third step, unsuccessfully, and ultimately the Union withdrew the grievance prior to arbitration. (Rec. Doc. 60-12 at 32). Vinson testified that the withdrawal was "[b]ased on the merit and the fact that the stated articles of the company's answer were not violated by the company." (Rec. Doc. 60-12 at 32).

In relation to his loss of benefits and subsequent termination, Holmes brought a previous lawsuit against both Folgers and the Plan. This court dismissed the claims against the Plan with prejudice for failure to exhaust administrative remedies. *Holmes v. Folger Coffee Company and The Proctor & Gamble Disability Plan*, 2006 WL 5581721 at *10 (E.D. La., August 25, 2006) (Engelhardt, J.) *aff'd*, 228 Fed.Appx. 377 (5th Cir. 2007). It also dismissed claims against Folgers for wrongful termination, noting that the dismissal did not prejudice Holmes's right to bring a claim against the Union for breach of its duty of fair representation, such as the one now before the Court. *Id.*

4

II. Law and Analysis.

A. *Summary Judgment*

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990) ( citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

B. *Termination of Disability and Employment*

This case was brought under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).[2] These cases are commonly referred to as "hybrid" cases because of the "intricate relationship between the duty of fair representation [by the union] and the enforcement of a collectively bargained agreement." *Bache v. American Telephone and Telegraph*, 840 F.2d 283, 287 (5th Cir. 1988). The parties agree that to carry his burden in this case, Holmes must prove both that his discharge was contrary to the contract, and that the Union breached its duty of fair representation. (Rec. Doc. 37-2 at 3; Rec. Doc. 60 at 4). *Hines v.*

---

[2] "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

*Anchor Motor Freight, Inc.*, 424 U.S. 554, 570-71 (1976). To prevail on a claim that the Union breached its duty, he must prove that its actions were arbitrary, capricious or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).

The Union brings its motion for summary judgment arguing that Holmes can succeed in neither of the two requisite prongs under Section 301. They first argue that Holmes's discharge was not contrary to the CBA. (Rec. Doc. 37-2 at 4).

*1. Whether the Employment Termination Violated the CBA*

Article XV of the CBA explicitly exempts the disability plan from the Union's grievance and arbitration procedures. (Rec. Doc. 37-6 at 9) ("the terms of these plans are not part of this Agreement and are not subject to the Grievance and Arbitration Procedures of this Agreement"). However, Holmes's complaint focuses solely on his wrongful termination claim. The grievance at issue in this case, per Holmes's complaint, is Grievance No. 04-08A. (Rec. Doc. 1). This was the grievance submitted by Vinson on behalf of Holmes. The statement of grievance was "Unjust Termination, without cause" and the adjustment requested was "Employment reinstated, and Employee made whole." (Rec. Doc. 37-18). The grievance lists the "violation of contract claimed" as Article X, sections 2b, 2e, and 2f. (Rec. Doc. 37-18). These sections read as follows:

> 2. An employee's seniority and employment status shall terminate if:
>
> (b)    the employee is discharged for cause; . . .
>
> (e)    the employee is absent from work for three (3) or more consecutive work days unless an excuse acceptable to the Company has been given before the expiration of said three (3) work days;
>
> (f)    the employee is absent from work because of sickness, injury, or other physical disability not covered by the Proctor & Gamble Disability Benefit Plan for a

> consecutive period exceeding the lesser of twelve (12) months or the length of the employee's seniority as the start of such absence unless the Company and the Union mutually agree in writing to extend such time in a particular case for periods of thirty (30) days or less up to a total of 6 months beyond the period described above wherein the employee would be able to return to work

Holmes asserts that the termination violated Section X, 2(b) because Folgers did not have cause to terminate him. (Rec. Doc 60 at 4). However, as the UAW correctly points out, the stated reason for Holmes's termination was under Section 2(e), absence from work for more than three consecutive days. (Rec. Doc 37-17). It is undisputed that Holmes was absent from work for more than three consecutive days. In his briefing, Holmes does not address whether he believes he gave "an excuse acceptable to the Company" that should have precluded his termination. Instead, he argues solely that the termination was without cause, in violation of Section 2(b). (Rec. Doc. 60 at 4-5).

Throughout its briefing, the UAW relies heavily on the division between the Plan and Folgers as separate legal entities, and that decisions under the Plan are not subject to the Union's grievance and arbitration procedure. (Rec. Doc. 37-2 at 10-11; Rec. Doc. 58 at 4). But, as detailed in the Part I, above, there appears to be significant overlap in the operations of these two allegedly separate entities: for example, notifications ostensibly sent by the Plan that threatened Holmes with termination if he failed to comply with their requests for documentation. If, as the Union argues, the Plan and Folgers are truly distinct, then such employee termination decisions should be not be coming from the Plan. The Court therefore has serious concerns about whether there were contractual violations, and whether any representations on the part of the Plan that Holmes need not submit Physician's Certificates while waiting to see Dr. Dowd impact Folgers's obligations under the CBA.

7

The parties' arguments do not effectively address the relevant standards under this prong of a Section 301 hybrid case, or the concerns highlighted above. However, the Court does not need to reach a conclusion regarding whether Folgers violated the CBA because the Court holds that Holmes fails to establish a violation of the second prong, the Union's duty of fair representation.

2.  *Whether the Union Violated its Duty of Fair Representation*

Under this second prong, the Court may find for the plaintiff only if the Union's actions were "arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190. Further, "[a] union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 46 (1998). "Mere errors in judgment" are insufficient to meet this standard. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 571 (1976).

In *Meredith v. Louisiana Federation of Teachers*, 209 F.3d 398 (5th Cir. 2000), the court upheld a finding that a union's treatment of a grievance to be arbitrary when it altogether ignored the plaintiff's grievance and refused to represent the employee. *Id.* at 403.

The Supreme Court in *Vaca* indicated that a union's treatment of a grievance cannot be "perfunctory," 386 U.S. at 194, which the Eighth Circuit has defined as acting without concern or solicitude or giving a claim only cursory attention. *Beavers v. United Paperworkers Int'l Union, Local 1741*, 72 F.3d 97, 100 (8th Cir. 1995).

Holmes argues that the Union's treatment of his claim was "perfunctory" because Vinson did not aggressively pursue Holmes's grievance, submitting very little paperwork and evidencing little intention of overturning Folgers's decision. (Rec. Doc. 60 at 6-8). This treatment could

8

well satisfy the Eighth Circuit's definition of perfunctory. However, the Fifth Circuit has not defined "perfunctory" for these purposes and Fifth Circuit case law makes clear that a Union is "given substantial discretion to decide whether and how far a grievance should be pursued." *Hammons v. Adams*, 783 F.2d 597, (5th Cir. 1986).

The dispositive case is *Turner v. Air Transport Dispatchers' Association*, 468 F.2d 297 (5th Cir. 1972). There, the court held that a union may "refuse to initiate the first steps in the appeal procedure when it believes the grievance to be without merit." *Id.* at 300. Importantly, the court found that further union investigation was unnecessary since the only difference between the two sides concerned the interpretation of the collective bargaining agreement, and not a dispute over the facts. *Id.* It went on to hold that "the mere fact that [the union] refused to file [the employee's] grievance . . . does not amount to perfunctory or arbitrary treatment." *Id.*

In this case, the Union abandoned Holmes's grievance because of the belief that no remedy was available. That is, because Holmes expressed an inability to return to work, he needed to challenge the termination of his disability payment, not his employment – even if the Union succeeded in its grievance, Holmes could not return to work and would not receive disability payments. As argued by the Union, "[t]here is simply nothing that the Union could do regarding this determination [that he was no longer eligible for disability benefits], no matter how many medical records Mr. Holmes provided the Union, as the decision was simply not grievable under the contract." (Rec. Doc. 58 at 7).

There are two separate assumptions at work here. First is the assumption that because disability benefits are not grievable under the CBA, the Union had no basis for an appeal of Holmes's employment termination. Second is the assumption that because Holmes remained

9

disabled and could not return to work, no remedy was available to Holmes under the CBA.

Both of these assumptions are suspect. However, neither assumption requires factual development beyond what was clearly known to the Union. Rather, the dispute, such as it was, was over the interpretation of the CBA, and whether the termination violated any clause of the CBA. Although it is certainly arguable that Holmes had some yet-to-be-discovered remedy available to him, the Union's interpretation of the CBA – that Holmes had no remedy and that he could not grieve the disability determination – are not "without rational basis or explanation." *Marquez*, 525 U.S. at 46. Certainly Holmes would have preferred more vigorous advocacy on his behalf, but this case is not analogous to *Meredith*, where the Union entirely refused to process the grievance. Rather, Vinson filed the grievance and pursued it to the final step before arbitration.

Given the extreme deference afforded to a Union's determinations in pursuing the merits of a grievance, the Court cannot find that the treatment of Holmes's grievance was arbitrary, discriminatory, or in bad faith. Mr. Holmes's remedy likely lay with the appeal to the Plan. Unfortunately for him, that avenue was foreclosed by his tardy appeal, and he was left with only the Union as a potential defendant. (Rec. Doc. 37-3 at 16-20). Although the Court has significant concerns about the blurred lines distinguishing Folgers's employment determinations and P&G's disability determination, the Union is not the proper source of redress.

Accordingly,

IT IS ORDERED that UAW's motion for summary judgment (Rec. Doc. 37) is GRANTED. Holmes's cross motion for partial summary judgment (Rec. Doc. 60) is DENIED. The pre-trial conference currently scheduled for Tuesday, February 23, 2010, is cancelled as

MOOT.

New Orleans, Louisiana, this 22nd day of February, 2010.

                                                    **HELEN G. BERRIGAN**
                                                    **UNITED STATES DISTRICT JUDGE**